COMPLAINT

Erica T. Yitzhak Esq.

The Yitzhak Law Group

erica@etylaw.com

Attorney for Plaintiff

Edward Reznik

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK DIVISION

Edward Reznik,

Plaintiff,

                               Case No.

v.                                COMPLAINT

                               Judge

COINBASE INC.,

Defendant.                          [Jury Trial Demanded]

## **COMPLAINT**

Plaintiff Edward Reznik ("Plaintiff") by its attorneys The Yitzhak Law Group, files this Complaint against Defendant COINBASE INC. ("Defendant") and alleges as follows:

### **NATURE OF THE ACTION**

1. This is an action concerning Coinbase, which is a wholly-owned subsidiary of publicly traded entity Coinbase Global, Inc., in the business of, *inter alia,* operating an exchange on which Coinbase users can buy and sell various cryptocurrencies and fiat currencies using their Coinbase accounts, or electronic "wallets," which are typically funded and de-funded via electronic transfers to and from Coinbase user's banks.

2. As the cryptocurrency market has increased in popularity and participation, Coinbase users have increasingly become the target of hackers who have breached Coinbase security and made unauthorized transfers of funds– whether in the form of cryptocurrency or fiat currency– from Coinbase users' accounts into the hackers' electronic wallets.

3. In response to the widespread instances of unauthorized electronic fund transfers on the Coinbase exchange, Coinbase has done nothing for a vast number of Coinbase users, including Plaintiff. More specifically, Coinbase– a "financial institution" as defined by the EFTA – has failed to undertake its responsibilities to remedy unauthorized electronic fund transfers under the EFTA and Regulation E by, for example, failing to timely and in good faith investigate fraudulent transfers, and failing to timely credit and/or provisionally recredit at all, users' accounts pending investigation. Coinbase users have repeatedly implored Coinbase to assist them in rectifying the unauthorized transfers from their accounts. Still, Coinbase has routinely and repeatedly ignored such requests, instead relying on automated responses that have not specifically addressed Coinbase users' concerns and have not provided timely, meaningful customer service. For many months, and continuing today, Coinbase has largely turned a blind eye to the systemic breaches of security on its exchange, leaving affected Coinbase users without recourse, short of litigation.

4. Additionally, Coinbase has failed to comply with the EFTA and Regulation E by failing to provide the affected Coinbase users with timely information concerning the status of the unauthorized electronic transfers from their account upon request, and has failed to comply with Regulation E by failing to provide all Coinbase users with initial disclosures required by Regulation E.

5. Plaintiff is seeking compensatory damages, treble damages, statutory damages, attorneys' fees, costs of suit, interest, and any relief the Court finds appropriate.

## THE PARTIES

6. Plaintiff Edward Reznik is an individual residing in Aventura, Florida, and a citizen of Florida.

7. Coinbase is a Delaware corporation founded in 2012. Coinbase has operated a crypto asset trading platform servicing U.S. customers since 2012. In April 2014, Coinbase became a wholly owned subsidiary of Coinbase Global Institute. Coinbase purports to be "a remote-first company" that maintains no principal executive office; but maintains an office in New York, specifically at 82 Nassau St #61234, New York, NY 10038.

## JURISDICTION AND VENUE

8. This Court has federal question subject matter jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 because this action is brought pursuant to the Electronic Funds Transfer Act of 1978, 15 U.S.C. § 1693, *et seq*.

9. This court has personal jurisdiction over Defendant Coinbase because Defendant Coinbase conducts its business operations in this District, including providing brokerage, trading, and other services to investors located in this District and holding licenses to conduct crypto asset

and money-transmitting business activities in this District. Coinbase, Inc. is also regulated and licensed as a money transmitter by the New York State Department of Financial Services and maintains an office in New York, specifically at 82 Nassau St #61234, New York, NY 10038.

10. Venue in this district is proper under 28 U.S.C. § 1391(b) and (c) since this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and Coinbase has substantial and systemic contacts in this District as alleged in further detail below.

11. In this case, there is complete diversity of citizenship between all Plaintiffs and Defendants. The amount in dispute in this action, exclusive of interest and costs, exceeds the sum of $75,000. Therefore, this Court has jurisdiction over this dispute under 28 U.S.C. § 1332.

## FACTS

12. Edward Reznik maintained a personal account with Coinbase that contained $50,395.19 worth of assets.

13. On March 6, 2023, Edward received an email from Coinbase informing him that a transaction (with a reference code of THSPGVV3) had been completed for $9,889. The funds would be transferred to a bank account he did not own.

14. That same day he received two additional emails informing him that his Coinbase account would be locked for security reasons and that no one (including him) would be able to perform any activities or actions on that account.

15. After realizing what had happened, Edward reached out to Coinbase support for assistance as he did not authorize any transaction.

16. Only on March 10, 2023, four days later, he received a response from Coinbase.

17. However, it was not a customer support representative but two automated emails from Coinbase (with the case support number 14804903) that informed him that his account would be locked until he completed verification and security steps.

18. He was also told he would receive his money back within ten days.

19. Instead of receiving his money back, he continued to receive emails from Coinbase while his account was drained.

20. On March 14, he received an email informing him that a withdrawal of funds in the amount of $9,849 (with a reference code of 3VPNEMR3) was completed.

21. Additionally, he continued to receive emails that day informing him of two **additional** transactions that had taken place.

22. One was for the $20,768.00 worth of GRT (a cryptocurrency) (with a reference code of 8VCAXFQ9QB) withdrawn to a bank account not owned by him.

23. The other transaction was for $9,889 for the withdrawal of funds (with a reference code of R9JK7TX8) to a bank account not owned by him.

24. After all the fraudulent transactions, Ed was left with his wallet drained and his account empty of funds.

25. He reported the fraudulent transactions to the Aventura Police Department, specifically Officer/Detective Fernandez Id. #293. The case number is 23-001350.

26. While he has reached out to Coinbase for support, they have not done anything to assist him with these unauthorized transactions.

27. He has lost a total of $50,395.19.

# FIRST CLAIM FOR RELIEF

## VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT 15 U.S.C. § 1693 *et seq.*

### Against Defendants – Coinbase

28. Plaintiff realleges and incorporates by reference its allegations, as defined below, realleges and incorporates by reference the allegation, in the preceding paragraphs as if fully alleged herein.

    **A. Legal Framework of the EFTA**

29. The EFTA and its corresponding regulations implemented by the Consumer Financial Protection Bureau ("CFPB"), 12 C.F.R. § 1005.1, et seq. were designed with the "primary objective" of "the provision of individual consumer rights." 15 U.S.C. § 1693; 12 C.F.R. § 1005.1 (b) (the "primary objective of the act and this part is the protection of individual consumers engaging in electronic fund transfers and remittance transfers.").

30. Relevant definitions:

a. A "financial institution" includes banks and credit unions, as well as "any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9). A "person" includes "a natural person or an organization, including a corporation . . ." 12 CFR § 1005.2(j).

b. An "account" includes any consumer asset account held directly or indirectly by a financial institution and established primarily for personal, family, or household purposes. 15 U.S.C. § 1693a(2); *see also* 12 CFR § 1005.2(j).

c. A "consumer "is defined as a "natural person." 15 U.S.C. § 1693a(6).

d. An "error" includes, *inter alia*, an "unauthorized electronic fund transfer." 15 U.S.C. § 1693(f)(1); 12 C.F.R. § 1005.11(a)(vii).

e. An "unauthorized electronic fund transfer" is defined as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. § 1693(a)(12); *see also* 15 C.F.R. §1005(m). The CFBP (as well as the Board of Governors of the Federal Reserve System) have specifically stated that "[a]n unauthorized [electronic funds transfer] includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery." *See* 12 C.F.R. § 205, Supp. I at 2(m) (Board of Governors' Official Interpretation of § 205.2(m)); 12 C.F.R. § 1005.2(m)); *see also Green v. Capital One, N.A.*, 2021 WL 3810750, at *3 (S.D.N.Y., 2021).[1]

f. An "electronic fund transfer" includes any transfer of funds initiated through a computer. While the definition does not include any transfer of funds, the primary purpose of which is the purchase or sale of a security or commodity if the security or commodity is regulated by the Securities and Exchange Commission ("SEC") or the Commodity Futures Trading Commission ("CFTC") or is purchased or sold through a broker-dealer regulated through the SEC or through a future commission merchant regulated by the CFTC, the "primary purpose" of the transfers of funds at issue is not the purchase or sale of a security or commodity, but rather outright theft. Indeed, CFPB has made clear that this "Securities Exemption" applies to, for example, a transfer initiated by a telephone order to a stockbroker to buy or sell securities or to exercise a margin call, but ***not*** a transfer involving an access device that accesses securities or commodities account that a consumer uses for purchasing goods or services or for obtaining cash (*i.e.*, a Coinbase account). 12 C.F.R. § 1005, Supp. I at 3(c)(4).

---

[1] The definition of "unauthorized electronic fund transfer" under § 1693(a)(12) and § 1005(m) excludes any electronic fund transfer initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer. The CFPB and Board of Governors' have confirmed that this exclusion does not encompass situations where a consumer technically furnishes his or her means of access to an account to a third party but due to fraud, threat or force.

31. The error resolution subpart of the EFTA provides, in relevant part, that if a financial institution, within sixty days after having transmitted to a consumer notice of an electronic fund transfer, receives oral or written notice in which the consumer (1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer; (2) indicates the consumer's belief that the documentation, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief that an error has occurred, the financial institution must investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. 15 U.S.C. § 1693f(a)(3); *see also* 12 C.F.R. § 205.11; *see also* Supp. I to § 205 at 11(b)(1).

32. If the financial institution determines that an error did occur, it has the option to either (1) timely correct the error, including the crediting of interest where applicable; or (2) timely provisionally recredit the consumer's account for the amount alleged to be in error pending the conclusion of the institution's investigation of the error within ten business days of being notified of the error. 15 U.S.C. § 1693f(c); *see also* 12 C.F.R. § 1005.11. In no circumstances can an investigation be concluded more than forty-five days after receipt of the notice of error, and during the pendency of the investigation, the consumer must be allowed full use of funds provisionally re-credited. *Id.*

33. Where a financial institution (1) fails to provisionally recredit a consumer's account within the ten-day period specified above, and the financial institution (a) did not make a good faith investigation of the alleged error, or (b) did not have a reasonable basis for believing that the consumer's account was not in error; or (2) knowingly and willfully concludes that a consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation, then the consumer shall be entitled to treble damages determined under section 1693m(a)(1).

34. The consumer may be held liable for an unauthorized electronic fund transfer where a financial institution provides the required notices under 15 U.S.C. § 1693c and 12 C.F.R § 1005.7(b). 15 U.S.C. § 1693g; 12 C.F.R. § 1005.6. Liability of the consumer, if applicable, is limited to $50 if the consumer notifies the institution within two business days after learning of the loss, or $500 if the consumer fails to notify the institution within two business days after learning of the loss. *Id*.

   B.  Factual Allegations

35. Coinbase is a "financial institution" as defined by the EFTA as it is a corporation that holds accounts belonging to consumers, including Plaintiff's account. As stated in Coinbase's User Agreement, Coinbase provides users with (a) "a hosted Digital Currency wallet(s) for holding Digital Currency ("Digital Currency Wallet"), and (b) a hosted US Dollars ("USD") wallet for holding USD (a "USD Wallet").

36. Plaintiff is a "consumer" as defined by the EFTA because he is a natural person.

37. Plaintiff's account is an "account" as defined by the EFTA and/or Regulation E because it is an asset account held directly by Coinbase and established primarily for personal, family, or household purposes. Plaintiff's account was used for personal purposes – *i.e.,* intended to earn income from appreciated assets – and not for business purposes.

38. The electronic fund transfers at issue have been "unauthorized electronic fund transfers" because they have been initiated by a person other than Plaintiff by fraud, without actual authority to initiate such transfers, and from which Plaintiff has received no benefit. The primary purpose of such transactions has not been for the purchase or sale of security but rather for the purpose of stealing securities or commodities.

39. As provided herein, Plaintiff has provided timely actual and/or constructive notice to Coinbase of the unauthorized electronic transfers from their accounts. Indeed, Coinbase knew or should have known of the repeated and widespread breaches of its security and subsequent theft of funds, as well as repeated and widespread requests for assistance from Plaintiff, such that it should have been aware of and prepared to handle inquiries concerning unauthorized electronic transfers from Plaintiff's account, and should have taken steps to monitor its users' accounts for unauthorized transfers.

40. However, Coinbase has failed to timely and in good faith investigate the unauthorized electronic transfers from Plaintiff's account as required by 15 U.S.C. § 1693f(a)(3) and 15 U.S.C. § 1693f(d) by failing to conduct a timely and reasonable review of its own records. *See* 12 C.F.R. § 205.11(c)(4); *see also* Supp. I to § 205 at 11(c)(4)– (5). Indeed, adequate and timely investigations would have easily led Coinbase to the conclusion that fraud had occurred, given that Plaintiff did not authorize the transfers at issue and that the fraudulent transfers had been made to accounts other than Plaintiff's used to fund their Coinbase account, and that these type of fraudulent transfers have been widely reported as a common issue on the Coinbase exchange. Accordingly, Plaintiff is entitled to compensatory damages, attorney fees, and costs for Coinbase's inadequate investigation pursuant to 15 U.S.C § 1693m(a).

41. Furthermore, Coinbase has failed to timely correct the "errors" (as noted above, statutorily defined to include "unauthorized electronic fund transfers"), or to correct the "errors" at all in Plaintiff's account by timely crediting or provisionally recrediting Plaintiff's account, or crediting or provisionally recrediting Plaintiff's account at all, after it had been breached and drained of funds. 15 U.S.C. § 1693f(b)–(c). This failure, separately, results in compensatory damages owed to Plaintiff pursuant to 15 U.S.C. § 1693m(a). Further, since Coinbase never provided disclosures to Plaintiff that were compliant with 12 C.F.R. § 1005.7(b), Plaintiff has no liability for the unauthorized fund transfers under 15 U.S.C. § 1693g and/or 12 C.F.R. § 1005.6.

42. Additionally, because Coinbase has not timely, provisionally re-credited, or provisionally re-credited at all, Plaintiff's account, and because Coinbase has failed to conduct timely, good faith investigations into the unauthorized transactions that Plaintiff has actually or constructively reported by, for example, failing to provide Plaintiff reasonable access to

timely and effective customer service or otherwise engaging in any good faith investigation of unauthorized electronic funds transfers, Coinbase is liable for treble damages under the EFTA.

43. Further, Coinbase is also liable for treble damages under the EFTA because it has not had a reasonable basis for believing Plaintiff's account were not in "error". Instead, Coinbase has failed to use the resources and procedures necessary to timely resolve, or resolve at all, the fraud that has occurred on Plaintiff's account, thus demonstrating that Coinbase has been unable or unwilling to timely form, or form at all, a reasonable basis for believing that Plaintiff's account was not in "error". Moreover, to the extent Coinbase has concluded that Plaintiff's account was not in "error", Coinbase has knowingly and willfully reached that conclusion when that conclusion could not have been drawn from the evidence available to Coinbase at the time of any investigation.

44. Plaintiff is therefore entitled to compensatory damages, attorney fees, and costs under 15 U.S.C. § 1693m, as well as treble damages under 15 U.S.C. § 1693f(e), on this claim.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF EFTA AND REGULATION E CUSTOMER SERVICE PROVISIONS
### 15 U.S.C. § 1693f (f) (6); 12 C.F.R. § 1005.11 (a) (7)
### Against Defendants – Coinbase

45. Plaintiff realleges and incorporates by reference its allegations, as defined below, realleges and incorporates by reference the allegation, in the preceding paragraphs as if fully alleged herein.

46. The EFTA, 15 U.S.C. § 1693(f)(6) and Regulation E, 12 C.F.R. § 1005.11(a)(7), (c)[2] require financial institutions to address "a consumer's request for additional information or clarification concerning an electronic fund transfer" within ten business days of receiving notice of error, or within 45 calendar days if the financial institution provisionally recredits the consumer's account, with interest where applicable, within ten business days of receiving the error.

47. As alleged above, Plaintiff is a "consumer" within the meaning of the EFTA and Regulation E.

---

[2] Consumers have a private right of action for violations of Regulation E. *See Lussoro v. Ocean Financial Federal Credit Union,* 456 F.Supp.3d 474, 492 (E.D.N.Y., 2020).

48. Coinbase a "financial institution" as alleged herein, has violated the EFTA and Regulation E by failing to timely provide information or clarification concerning electronic fund transfers, including requests Plaintiff made to determine whether there were unauthorized electronic transfers from their account. *See* 15 U.S.C. § 1693(f)(6); 12 C.F.R. § 1005.11.

49. Accordingly, Coinbase is liable to Class Members for statutory damages, attorney fees, and costs for this claim pursuant to 15 U.S.C § 1693m.

## THIRD CLAIM FOR RELIEF

**VIOLATION OF EFTA AND REGULATION E NOTICE REQUIREMENTS  15 U.S.C. § 1693; 12 C.F.R. § 1005.7**

**Against Defendants – Coinbase**

50. Plaintiff realleges and incorporates by reference its allegations, as defined below, realleges and incorporates by reference the allegation, in the preceding paragraphs as if fully alleged herein.

51. 15 U.S.C. § 1693c and Regulation E, 12 C.F.R. § 1005.7, requires all financial institutions to make the disclosures set forth in § 1005.7(b) before the first electronic fund transfer is made involving a consumer's account.

52. Coinbase, a "financial institution" as alleged herein, has violated Regulation E by failing to provide adequate initial disclosures to Plaintiff, including, as applicable: (1) a summary of Plaintiff's liability, under 12 C.F.R. § 1005.6 or under state or other applicable law or agreement, for the electronic fund transfers; (2) the telephone number and address of the person or office to be notified when a Plaintiff believes that an electronic fund transfer has been made or may be made; (3) Coinbase's business days; (4) the type of electronic fund transfers that Plaintiff may make and any limitations on the frequency and dollar amount of transfers; (5) any fees imposed by Coinbase for electronic fund transfers or for the right to make transfers; (6) a summary of Plaintiff's rights to receipts and periodic statements, as provided in 12 C.F.R. § 1005.9 of this part, and notices regarding preauthorized transfers as provided in 12 C.F.R. § 1005.10(a) and (d); (7) a summary of Plaintiff's right to stop payment of a preauthorized electronic fund transfer and the procedure for placing a stop-order, as provided in 12 C.F.R. § 1005.10(c); (8) a summary of Coinbase's liability to Plaintiffs under section 910 of the Act for failure to make or to stop certain transfers; (9) the circumstances under which, in the ordinary course of business, Coinbase may provide information concerning Plaintiff's account to third parties: (10) A notice that is substantially similar to Model Form A-3 as set out in Appendix A of C.F.R. 1005.1, *et seq*., concerning error resolution; and (11) a notice that a fee may be imposed by an automatic teller machine operated as defined in 12 C.F.R. § 1005.16(a), when a Plaintiff initiates an electronic fund transfer, or makes a balance inquiry, and by any network used to complete the transaction.

53. As a result of Coinbase's violation of the notice requirements of 15 U.S.C. § 1693c and Regulation E, Plaintiff is entitled to statutory damages, attorney fees, and costs for this claim pursuant to 15 U.S.C. § 1693m(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendants, granting Plaintiff the following relief:

1. The entry of judgment in favor of the plaintiff on each and every cause of action;

2. The award of the requested [equitable relief / damages in the amount of [amount];

3. The award of costs of the suit and attorney's fees, if applicable; and

4. Such other relief as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues that are so triable.

Dated: November 20, 2023

Respectfully submitted,

*//ss// Erica T. Yitzhak*
Erica T. Yitzhak Esq.
The Yitzhak Law Group
1 Linden Place, Suite 406
Great Neck, NY 11021
Telephone: 516-466-7144
Facsimile:  516-466-7145

Email: erica@etylaw.com

Attorneys for Plaintiff

10