USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/11/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD REZNIK,

       Plaintiff,

-against-

COINBASE, INC.,

       Defendant.

23-CV-10248 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

In a Complaint filed November 21, 2023, Plaintiff Edward Reznik ("Reznik") alleges Defendant Coinbase, Inc. ("Coinbase") failed to comply with the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, when it did not prevent unauthorized transfers from his Coinbase account. Reznik allegedly lost over $50,000 because of these unauthorized transfers. *See* Dkt. No. 1 (hereinafter "Cplt."). Defendant Coinbase seeks to stay these proceedings and compel Reznik to pursue his claims against Coinbase in arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq. See* Dkt. Nos. 7–8 (hereinafter the "Motion" or "Mot."). For the reasons stated herein, Coinbase's Motion is GRANTED.

## BACKGROUND

### I. Plaintiff's Allegations

In his Complaint, Reznik alleges that beginning on March 6, 2023, an unknown scammer executed multiple unauthorized transfers from his Coinbase account, totaling $50,395.19 in losses. Cplt. ¶¶ 12–27. After the first unauthorized transfer, Reznik claims that he promptly alerted Coinbase to the issue and did so again multiple times as the transfers continued, but that Coinbase did nothing to prevent the transfers except send him "automated emails." *Id.* ¶¶ 15–18, 26. Reznik alleges that, "[i]nstead of receiving his money back, he continued to receive emails

1

from Coinbase while his account was drained," and that in the intervening months Coinbase has "not done anything to assist him with these unauthorized transactions." *Id*. ¶¶ 19, 26.

## II.    The Coinbase User Agreement and Arbitration Provision

Coinbase is an internet-based business, which accepts new customers through online account creation procedures.  As is common in such businesses, Coinbase requires users to accept its User Agreement before opening an account, and to periodically agree to updated User Agreements in order to maintain access to the account.  *See* Mot. Ex. 1 (hereinafter "Black Decl.") ¶¶ 6, 9, 14–15.  Reznik opened his Coinbase account in 2017.  *Id*. ¶ 8; Ex. A.  As required by Coinbase, Reznik accepted the User Agreement when he first opened his account in 2017, by checking a box that stated, among other things "I agree to the User Agreement and Privacy Policy."  *Id*. ¶ 9; Ex. B.  Both policies were hyperlinked within the text of this checkbox, so that prospective users could review the full text before clicking "Create Account."  *Id*.

Reznik again accepted the User Agreement when the terms were updated in 2022 (the "2022 User Agreement").[1] *Id*. ¶¶ 8, 10.  When Coinbase users, including Reznik, logged into their accounts on or after February 3, 2022, they were routed to a landing page that presented users with the terms of the 2022 User Agreement.  *See* Mot. Ex. 2 (hereinafter "Zia Decl.") ¶ 5.  The full text of the agreement was provided in a "scroll box" containing the entire 2022 User Agreement, underneath which was a blue button that said, "Accept terms."  *Id*. ¶ 5, Ex. F.  The landing page also provided a link for customers to read a "summary of changes" to the User Agreement and get answers to their questions.  *Id*.  Any customer who followed that link was

---

[1]    On opposition, Reznick does not dispute that he accepted the operative User Agreement when he first joined Coinbase in 2017, nor does he dispute that he again accepted the updated Coinbase User Agreement in February 2022, when Coinbase updated its terms.  Likewise, he does not dispute any of the facts about how Coinbase presented its various User Agreements to customers during the relevant time periods.  *See generally* Dkt. No. 14 (hereinafter "Opp.") at 2–3.

directed to a page that stated, among other things, in large-print bulleted type that the 2022 User Agreement contained a "revised [ ] Arbitration Agreement, which explains what legal rights you have and what you can expect from us in case of any issues." *Id*. ¶ 6, Ex. G.  This page also provided answers to a number of anticipated customer questions about the 2022 User Agreement and Coinbase's accompanying policies, including instructions for any user who chose not to accept the new terms and wished to close their account and move their funds off the platform. *Id*.  In support of its Motion, Coinbase provides evidence, attached to sworn declarations, from its internal databases that show Reznik clicked on the "Accept terms," button on February 15, 2022, assenting to Coinbase's 2022 User Agreement, including its Arbitration Provision, and continued to use his Coinbase account thereafter.  Zia Decl. ¶ 8; Black Decl. ¶ 10, Ex. A.

> The third paragraph of Coinbase's 2022 User Agreement states:
>
> PLEASE BE AWARE THAT SECTION 7 (CUSTOMER FEEDBACK, QUERIES, COMPLAINTS, AND DISPUTE RESOLUTION) AND APPENDIX 5 OF THIS AGREEMENT, CONTAIN PROVISIONS GOVERNING HOW TO RESOLVE DISPUTES BETWEEN YOU AND COINBASE. AMONG OTHER THINGS, APPENDIX 5 INCLUDES AN AGREEMENT TO ARBITRATE WHICH REQUIRES, WITH LIMITED EXCEPTIONS, THAT ALL DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY BINDING AND FINAL ARBITRATION. APPENDIX 5 ALSO CONTAINS A CLASS ACTION AND JURY TRIAL WAIVER. PLEASE READ SECTION 7 AND APPENDIX 5 CAREFULLY.

Black Decl. ¶ 13, Ex. D at 1 (all-caps in original).

As stated in this warning to users, Appendix 5 of the 2022 User Agreement contains an agreement to arbitrate certain disputes that may arise between the user and Coinbase (the "Arbitration Provision").  *See id*. at App'x 5 § 1.1.  In relevant part, the Arbitration Provision states that the user and Coinbase:

> [A]gree that any dispute, claim, disagreements arising out of or relating in any way to access to or use of the Services or of the Coinbase Site, any Communications you receive, any products sold or distributed through the Coinbase Site, the

3

> Services, or the User Agreement and prior versions of the User Agreement, including claims and disputes that arose between us before the effective date of these Terms (each, a 'Dispute') will be resolved by binding arbitration, rather than in court….

*Id*.

The Arbitration Provision also expressly delegates all questions of arbitrability to the arbitrator: "[t]he arbitrator shall have exclusive authority to resolve any Dispute, including, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement . . . ." *Id.* at App'x 5 § 1.6 (the "Delegation Provision").

### III.    Procedural History

Plaintiff Reznik initiated this action on November 21, 2023, seeking damages for Coinbase's alleged violations of the EFTA and attorney's fees. *See* Cplt. at 10.  On February 9, 2024, Coinbase filed the Motion, seeking to stay these proceedings and compel Reznik to pursue his claims against Coinbase in arbitration.  *See generally* Mot.  In the Motion, Coinbase argues that the FAA requires the Court to enforce Coinbase's User Agreement and the Arbitration Provision included therein because: *first*, the parties' agreement to arbitrate is valid, and *second*, the specific dispute at issue in this case falls within the scope of that valid agreement. *Id*. at 7–17.  On February 29, 2024, Reznik opposed the Motion, arguing only that the Coinbase Arbitration Provision is "grossly unconscionable," because it allows Coinbase to address user complaints through confidential arbitration proceedings, and that the public interest would be served by addressing Coinbase's alleged failures in user security in a public forum.  *See* Opp. at 3–4.  On opposition, Reznik notably does *not* argue that Coinbase's Arbitration Provision is unconscionable as applied to Reznik, and indeed does not dispute he was aware that the 2022

4

User Agreement contained an Arbitration Provision, nor that he explicitly assented to the 2022 User Agreement. *Id*. Furthermore, Reznik's opposition did not include any sworn declarations or attach any evidence.

On March 1, 2024, the Court held an Initial Pretrial Conference during which the Court announced its decision granting the Motion, and informed the parties that a written decision would follow. Neither party raised any new issue not addressed in the Motion or Opposition. *See* March 1, 2024 Minute Entry.

**LEGAL STANDARD**

The FAA "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (internal references omitted). Under Section 2, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 provides that parties can petition a district court for an order compelling arbitration. 9 U.S.C. § 4. The role of the courts is "limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Federal courts "apply ordinary state-law principles that govern the formation of contracts" in determining whether a valid agreement to arbitrate exists. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

In considering a motion to compel arbitration, "courts apply a standard similar to that applicable for a motion for summary judgment," deciding whether there is an issue of fact as to the making of the agreement based on "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with … affidavits." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (internal quotation marks omitted).  "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).  It may not satisfy this burden through "general denials of the facts on which the right to arbitration depends . . . but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

## DISCUSSION

Federal courts apply state law to determine whether there is a valid agreement to arbitrate.  *Nicosia*, 834 F.3d at 231.  Under California law, "[t]o form a contract, there must be mutual manifestation of assent[.]" *Meyer*, 868 F.3d at 74 (internal quotation marks omitted).[2]

On the record before the Court, there is no genuine dispute of fact that Reznik had notice of the terms of the 2022 User Agreement, including its mandatory Arbitration Provision and the Delegation Provision, and that he manifested his assent to that agreement.  Indeed, Reznik does not even attempt to dispute these facts.  There is also no genuine dispute that the allegations in this lawsuit are within the scope of the 2022 User Agreement's Arbitration Provision.  Reznik's lawsuit seeks damages for Coinbase's alleged failure to stop unauthorized transactions from

---

[2] The 2022 User Agreement contains a California choice of law provision. *See* Black Decl., Ex. D § 9.5.  On opposition, Plaintiff cites only to New York law, without justification. *See* Opp. at 3.  The Court here applies California law pursuant to the terms of the parties' agreement, but the choice between New York and California law is not dispositive with respect to the issue of whether a valid arbitration agreement was formed.

being made from his account, and Coinbase's failure to communicate with him about those transactions. Such complaints undoubtedly "aris[e] out of" and relate to "access to or use of the Services or of the Coinbase Site" as well as "Communications receive[d]," from Coinbase. *See* Black Decl. Ex. D at App'x 5 § 1.1. Reznik, on opposition, does not disagree.[3]

Reznik argues only that the Arbitration Provision cannot be enforced because it is "grossly unconscionable," because it allows Coinbase "to repeatedly maintain confidentiality in arbitration proceedings," which "undermin[es] the principles of transparency and accountability essential to consumer protection." Opp. at 3. But under California law, "a finding of unconscionability requires a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011) (internal quotation marks omitted) (citing *Armenariz v. Foundation Health Psychcare Servs. Inc.*, 24 Cal. 4th 83, 114 (2000)). Reznik does not even allege (let alone provide evidence in support) that he was in any way procedurally disadvantaged or surprised by the Arbitration Provision. In fact, the record before the Court shows no dispute as to Reznik's understanding and agreement to the Arbitration Provision, and all other provisions of the 2022 User Agreement.[4]

Moreover, with respect to the "substantive" element of the unconscionability analysis, Plaintiff cites no caselaw in support of his primary argument that the public interest in transparency around a private business' disputes with its customers can overcome the statutory

---

[3] Regardless, the Delegation Provision of the 2022 User Agreement delegates questions of arbitrability to the arbitrator. Black Decl. Ex. D at App'x 5 § 1.6. Because the Court finds a valid agreement to arbitrate, the Delegation Provision too is valid and enforceable.

[4] Although Reznik does not raise this in his Opposition, the Court notes that the form in which the Coinbase User Agreements were presented to Coinbase users (either as a "clickwrap" or "scrollwrap" agreement) has repeatedly been held sufficient to support a finding of mutual assent. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 429, n.41 (2d Cir. 2004) (collecting cases); *see also Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 465 (S.D.N.Y. 2017); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012); *Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 594 (S.D.N.Y. 2001), *aff'd*, 306 F.3d 17 (2d Cir. 2002).

presumption in favor of enforcing arbitration agreements, and the Court is aware of none. Rather, as Coinbase notes in its brief, this specific Arbitration Provision has been enforced by numerous federal courts, including most recently in the Ninth Circuit.  *See* Mot. at 1 n.1; *see also Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023).  The Court finds no reason why this Arbitration Provision should now be deemed substantively unconscionable, either as applied to Reznik specifically or as a matter of "public policy."

Accordingly, the Court concludes that there exists a valid and enforceable agreement between Reznik and Coinbase to arbitrate their dispute over the transfers from Reznik's Coinbase account, as manifested in the 2022 User Agreement and its Arbitration Provision. Because Reznik has heretofore refused to arbitrate, the Court now grants Coinbase's motion to compel.

Coinbase has also requested a stay of the action pending arbitration.  Section 3 of the FAA provides that "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3; *see also Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (The FAA "mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested.").  The Court will therefore stay this action pending the arbitration.

## CONCLUSION

For the reasons stated above, Coinbase's Motion to Compel Arbitration is GRANTED. The Clerk of Court is respectfully directed to terminate Docket No. 7 and to stay this action

pending arbitration.  The parties shall report to the Court within seven days of the conclusion of the arbitration and shall at that time show cause why this case should not be dismissed.

Dated: March 11, 2024
      New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge